("REVOLVING DOOR").

No. M–81–88.

District of Columbia Court of Appeals.

April 30, 1982.

Before NEWMAN, Chief Judge, and KELLY, KERN, NEBEKER, MACK, FERREN, PRYOR and BELSON, Associate Judges.

**3.** *Id.*

## ORDER

PER CURIAM:

On February 9, 1979, the Board of Governors of the District of Columbia Bar filed with this court a petition and supporting memorandum, supplemented by a memorandum of July 13, 1979, recommending approval of certain amendments to the disciplinary rules under Canon 9 of the Code of Professional Responsibility (incorporated in Rule X of the rules governing the Bar). The Board also proposed a related amendment to DR 5–105(D) under Canon 5 of the Code. To provide perspective and thus aid the court, the Board also submitted recommendations by the Legal Ethics Committee of the Bar which in a number of respects differed from the Board's own recommendations.

Collectively, these proposals came to be known as "revolving door" amendments, for they addressed the ethical problems encountered when a lawyer moves between government and private employment. Typically, in this situation, the private firm already has (or may wish to accept) a client involved in a matter in which the lawyer was involved on the other side while with the government. Thus, if the lawyer's own disqualification is not to be imputed to the private firm, there is a need to insulate that lawyer from his or her firm's participation in the matter, in order to prevent any actual or apparent impropriety.

On March 7, 1979, this court entered an order for publication of the Board's petition, calling for written comments by July 13, 1979. Following consideration of the many responses, we issued on April 17, 1980 a Notice of Proposed Order setting forth proposed amendments to DR 5–105(D), DR 9–101, DR 9–102, DR 9–103, and related definitions, and inviting written comments to be filed no later than June 2, 1980. *See* Appendix A hereto. These proposals essentially incorporated both the "screening" and "waiver" requirements of ABA Formal Opinion No. 342 (1975). (Less than a month earlier, on March 31, 1980, a division of this court had issued its decision in *Brown v. District of Columbia Board of Zoning Adjustment*, D.C.App., 413 A.2d 1276 (1980), which acknowledged ABA Formal Opinion No. 342 as the controlling rule.)

After reviewing the responses to the April 7, 1980 Notice of Proposed Order and after further considering the matter, this court issued on July 28, 1981 an Order and Notice of Proposed Order. *See* Appendix B hereto. Therein we adopted a clarifying amendment of DR 5–105(D) (as amended by Order of August 6, 1981 to cure a typographical error). We also proposed to substitute what we characterized as a "screening and affidavits" approach for the "screening and waiver" amendments in the April 17, 1980 Notice; and we eliminated the imputed disqualification of a law firm attributable to employment of former judicial and administrative law clerks (as defined). We set September 15, 1981 as the deadline for additional written comments.

In response to comments received and after further consideration, this court has made still other revisions. In particular, we now adopt suggestions that notification of disqualification shall be required (if there is a difference) upon the later of the acceptance of employment by the disqualified lawyer's firm, or of disclosure of this fact and subject matter on the public record; that notification by "a signed document," rather than an affidavit, shall suffice; and that no second filing upon completion of the representation shall be required.

This process has taken over three years since the Board of Governors of the Bar petitioned this court. The Legal Ethics Committee of the Bar actively reviewed the issues for a period of years before that. All proposals have been thoroughly reviewed by the members of the Bar, as reflected in hundreds of written critiques filed with this court, and this court has responded to the many helpful comments through three rounds of proposals published in 1979, 1980, and 1981. We are satisfied that the rules announced in this Order reflect a substantial consensus of the Bar, as well as a necessary level of public protection.

Our dissenting colleagues suggest that this court should await the outcome of the debate by the American Bar Association House of Delegates later this year on new Rules of Professional Conduct proposed by the ABA's Commission on the Evaluation of Professional Standards (the "Kutak Commission"). We decline to do so for three reasons: First, the lawyers and the courts of this jurisdiction, where the issue is of greatest significance in the nation, have thoroughly evaluated the problem over a number of years. Second, this court's Order reflects the approach taken by the Kutak Commission while adding important clarifications. Finally, it is important not to defer any longer our reconsideration of the law of this jurisdiction, ABA Formal Opinion No. 342, which a division of this court followed two years ago in *Brown, supra,* and which—because of its waiver requirement—we have come to regard as unwise.

Accordingly, it is

ORDERED that DR 9–101, DR 9–102, DR 9–103, and related definitions are hereby amended to read as follows:

DR 9–101 Avoiding Impropriety or the Appearance of Impropriety.

(A) A lawyer shall not state or imply that he or she is able to influence improperly, or upon grounds irrelevant to a proper determination on the merits, any tribunal, legislative body or legislator, or public official.

(B) A lawyer shall not at any time accept private employment in connection with any matter in which he or she participated personally and substantially as a public officer or employee, which includes acting on the merits of a matter in a judicial capacity.

DR 9–102 Imputed Disqualification of Partners, Associates, and Of Counsel Lawyers.

(A) If a lawyer is required to decline or to withdraw from employment under DR 9–101(B), on account of personal and substantial participation in a matter other than as a law clerk, no partner or associate of that lawyer, or lawyer with an of counsel relationship to that lawyer, may accept or continue such employment except as provided in (B) and (C) below.

(B) The prohibition stated in DR 9–102(A) shall not apply if the personally disqualified lawyer is screened from any form of participation in the matter or representation as the case may be, and from sharing in any fees resulting therefrom.

(C) When any of counsel lawyer, partner or associate of a lawyer personally disqualified under DR 9–101(B) accepts employment in connection with the matter giving rise to the personal disqualification, or when the fact and subject matter of such employment are otherwise disclosed on the public record, whichever occurs later, the following notifications shall be required: (1) The personally disqualified lawyer shall file with the public department or agency and serve on each other party to any pertinent proceeding a signed document attesting that during the period of his or her disqualification the personally disqualified lawyer will not participate in any manner in the matter or the representation, will not discuss the matter or the representation with any partner, associate, or of counsel lawyer, and will not share in any fees for the matter or the representation. (2) At least one affiliated lawyer shall file with the same department or agency and serve on the same parties a signed document attesting that all affiliated lawyers are aware of the requirement that the personally disqualified lawyer be screened from participating in or discussing the matter or the representation and describing the procedures being taken to screen the personally disqualified lawyer.

(D) Signed documents filed pursuant to DR 9–102(C) shall be public except to the extent that a lawyer submitting a signed document shows that disclosure is inconsistent with Canon 4 or provisions of law.

(E) When the fact and subject matter of a client's employment of any of counsel lawyer, partner or associate of a lawyer personally disqualified under DR 9–

101(B) has been otherwise disclosed to the public department or agency but not to the general public, the signed documents required by DR 9–102(C) shall be filed only with the public department or agency to which such disclosure has been made and shall not be served on any other person. So long as disclosure has not been otherwise made on the public record, the public department or agency shall keep the signed documents confidential.

DR 9–103 Preserving Identity of Funds and Property of a Client.

[Present DR 9–102, without change other than renumbering.]

*Definitions*

"Law clerk" means a person, typically a recent law school graduate, who acts, typically for a limited period, as confidential assistant to a judge or judges of a court; to an administrative law judge or a similar administrative hearing officer; or to the head of a governmental agency or to a member of a governmental commission, either of which has authority to adjudicate or to promulgate rules or regulations of general application.

"Matter" includes any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties.

"Participate" includes any action, directly or indirectly, through decision, approval, disapproval, recommendation, the rendering of advice, investigation or otherwise.

APPENDIX A

DISTRICT OF COLUMBIA COURT OF APPEALS

No. ____

NOTICE OF PROPOSED ORDER

April 17, 1980

Before NEWMAN, Chief Judge, and KELLY, KERN, GALLAGHER, NEBEK-ER, HARRIS, MACK, FERREN and PRYOR, Associate Judges.

The en banc Court has before it for consideration the petition dated February 9, 1979, submitted by the Board of Governors of the District of Columbia Bar, the memorandum in support thereof, and its supplementary memorandum of July 13, 1979, wherein the Board recommends that the Court approve amendments to the Code of Professional Responsibility under Canon 9, as incorporated in Rule X of the rules governing the bar, and that the Court amend DR 5–105(D). (The proposed amendments are commonly referred to as the "revolving door" amendments.) The Court has also received and considered many written comments following the publication of the petition.

The Court proposes to enter an order on or after Tuesday, June 10, 1980, which would adopt and amend DR 5–105(D), DR 9–101, DR 9–102, DR 9–103, and the definitions section to read as follows:

*DR 5–105*

(D) If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, *other than DR 2–110(B)(3) or (B)(4) or DR 6–101(A)(1), or, in appropriate cases, DR 5–101(A),* no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment, *provided that any imputed disqualification or restrictions that attach because a lawyer was a public employee shall be determined under Canon 9.* [The underlined portions represent the additions to the present rule.]

*DR 9–101* Avoiding Even the Appearance of Impropriety.

(A) A lawyer shall not state or imply that he or she is able to influence improperly, or upon grounds irrelevant to a proper determination on the merits, any tribunal, legislative body or legislator, or public official.

(B) A lawyer shall not at any time accept private employment in connection with any matter in which he or she participated personally and substantially as a

public officer or employee, which includes acting on the merits of a matter in a judicial capacity.

*DR 9–102* Imputed Disqualification of Partners, Associates, and of Counsel Lawyers.

(A) If a lawyer is required to decline or to withdraw from employment under DR 9–101(B), on account of personal and substantial participation in a matter, no partner or associate of that lawyer, or lawyer with an of counsel relationship to that lawyer, may accept or continue such employment except as provided in (B) below.

(B)(1) The imputed disqualification of one or more lawyers under DR 9–102(A) may be waived by the employing public agency or department, but only if the following procedures are followed and determinations made.

(a) The waiver shall be made in writing by the lawyer or other official who has principal operational responsibility for the matter for the public agency or department (or by a government or agency having supervisory responsibility over that lawyer or other official) upon a determination by that official (or department or agency) that the waiver is not inconsistent with the public interest. The written waiver shall state clearly the basis for the decision and shall immediately be made public insofar as publication is not inconsistent with Canon 4 or provisions of law.

(b) Prerequisites to granting the waiver shall include but not be limited to:

(1) an affidavit by the former public officer or employee attesting (i) that he or she will not participate in the matter in any way, directly or indirectly, and (ii) that he or she will not share, directly or indirectly, in any fees in the matter, and

(2) an affidavit by at least one private lawyer who would be participating in the matter but for the imputation of the disqualification of the disqualified lawyer, attesting (i) that he or she and all affiliated lawyers are aware of the require-

ment that the former public officer or employee be screened from participating in or discussing the matter or the representation and describing the procedures being taken to screen the personally disqualified lawyer; (ii) that the client or clients have been so informed; and (iii) that at least one affiliated lawyer will file and serve, promptly upon final disposition of the matter or upon expiration of the period of personal disqualification, whichever occurs sooner, a further affidavit describing the actual compliance by the affiliated lawyers with the procedures for screening the personally disqualified lawyer.

(B)(2) The procedures and determinations prescribed by DR 9–102(B)(1) shall apply in the absence of other procedures adopted by the department or agency in question within its authority to prescribe rules regarding practice of present or former officials or employees of the department or agency. If a department or agency adopts procedures and specifically indicates that they are in lieu of the provisions of DR 9–102(B)(1), such procedures shall thereafter be applicable to the conduct of lawyers with respect to matters within the jurisdiction of the department or agency.

(C) If a personally disqualified lawyer or an affiliated lawyer has stated in accordance with DR 9–102(B) that further affidavits describing compliance with screening procedures will be filed and served upon final disposition of the matter or upon expiration of the period of disqualification, such affidavits shall be filed and served as soon as practicable after they are due.

(D) Affidavits filed pursuant to DR 9–102(B) and (C) shall be public except to the extent that a lawyer submitting an affidavit shows that disclosure is inconsistent with Canon 4 or provisions of law.

*DR 9–103* Preventing Identity of Funds and Property of a Client.

[Present DR 9–102, without change other than renumbering.]

*Definitions*

"Matter" includes any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties.

"Participate" includes any action, directly or indirectly, through decision, approval, disapproval, recommendation, the rendering of advice, investigation or otherwise.

In all other respects, the Court proposes to deny the petition.

The amendments to Canon 9 shall be effective as of the date of the final order adopting them.

Because of the interest expressed in the pending petition, the Court is hereby prepublishing its proposed order to accord interested parties an opportunity to submit written comments. In addition, the Court is mailing a copy of this Notice of Proposed Order to all persons who previously submitted written comments to the Court with respect to this petition. Ten copies of any comments shall be filed with the Clerk of the Court no later than Monday, June 2, 1980.

### APPENDIX B

### DISTRICT OF COLUMBIA COURT OF APPEALS

No. M–81–88

("Revolving Door")

July 28, 1981

Before NEWMAN, Chief Judge, and KELLY, KERN, NEBEKER, HARRIS, MACK, FERREN and PRYOR, Associate Judges.

### ORDER
### and
### NOTICE OF PROPOSED ORDER

On April 17, 1980, the court issued a Notice of Proposed Order in this proceed-ing.[1] That notice had essentially two components. The first proposed a clarifying amendment of DR 5–105(D) of the American Bar Association's Code of Professional Responsibility (made effective for this jurisdiction by Rule X of our Rules Governing the Bar). We have decided to adopt that proposed amendment. Accordingly, it is

ORDERED that DR 5–101(D), as applied in the District of Columbia, hereby is amended to read as follows:

(D) If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, *other than DR 2–110(B)(3) or (B)(4) or DR 6–101(A)(1), or, in appropriate cases, DR 5–101(A)*, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment, *provided that any imputed disqualification or restrictions that attach because a lawyer was a public employee shall be determined under Canon 9.* [The italicized portions represent additions to the former rule.]

The second component of our earlier Notice of Proposed Order contemplated the adoption of a new DR 9–101(A), the adoption of the present DR 9–101(A) and DR 9–101(B) in somewhat expanded form as an amended DR 9–101(B), the adoption of a new DR 9–102, the redesignation of the present DR 9–102 as a new DR 9–103, and the adoption of two definitions (of the words "matter" and "participate") to aid in applying the new rules. Essentially, when a private attorney found himself in a "revolving door" situation, the proposed rules would have required both screening and a written waiver to be obtained to permit the partners or associates of a former public official or employee to participate in a matter from which the former public official or employee was disqualified by virtue of the nature of his government service.

The comments which we have received, especially with respect to the waiver pro-

---

1. At that time, a case number had not been assigned to our consideration of the so-called "revolving door" proposals. The number re-flected above is newly-assigned, and should be utilized on any future submissions to the court on this subject.

posal, have been predominantly negative, and we have decided not to adopt, and hereby withdraw, what may be characterized for purposes of simplicity as the "waiver" proposal.

The court has determined to consider the adoption of an alternative proposal, which, again for purposes of simplicity, may be characterized as a "screening and affidavits" proposal.[2]

Accordingly, notice hereby is given of the proposed adoption of the following amended DR 9–101, DR 9–102, and DR 9–103 (with related definitions):

*DR 9–101* Avoiding Even the Appearance of Impropriety.

(A) A lawyer shall not state or imply that he or she is able to influence improperly, or upon grounds irrelevant to a proper determination on the merits, any tribunal, legislative body or legislator, or public official.

(B) A lawyer shall not at any time accept private employment in connection with any matter in which he or she participated personally and substantially as a public officer or employee, which includes acting on the merits of a matter in a judicial capacity.

*DR 9–102* Imputed Disqualification of Partners, Associates, and Of Counsel Lawyers.

(A) If a lawyer is required to decline or to withdraw from employment under DR 9–101(B), on account of personal and substantial participation in a matter other than as a law clerk, no partner or associate of that lawyer, or lawyer with an of counsel relationship to that lawyer, may accept or continue such employment except as provided in (B) below.

(B) The prohibition stated in DR 9–102(A) shall not apply if the personally disqualified lawyer is screened from any form of participation in the matter or representation as the case may be, and from sharing in any fees resulting therefrom. In order to ensure such screening,

(1) the personally disqualified lawyer shall file with the public department or agency and serve on each other party to any pertinent proceeding an affidavit attesting that during the period of his disqualification the personally disqualified lawyer will not participate in any manner in the matter or the representation, will not discuss the matter or the representation with any partner, associate, or of counsel lawyer, and will not share in any fees for the matter or the representation; and that the personally disqualified lawyer will file and serve, promptly upon final disposition of the matter or upon expiration of the period of personal disqualification, whichever occurs sooner, a further affidavit describing his actual compliance with these undertakings. (2) At least one affiliated lawyer shall file with the same department or agency and serve on the same parties an affidavit attesting that all affiliated lawyers are aware of the requirement that the personally disqualified lawyer be screened from participating in or discussing the matter or the representation and describing the procedures being taken to screen the personally disqualified lawyer; and that at least one affiliated lawyer will file and serve, promptly upon final disposition of the matter or upon expiration of the period of personal disqualification, whichever occurs sooner, a further affidavit describing the actual compliance by the affiliated lawyers with the procedures for screening the personally disqualified lawyer.

(C) If a personally disqualified lawyer or an affiliated lawyer has stated in accordance with DR 9–102(B) that further affidavits describing compliance with screening procedures will be filed and served upon final disposition of the matter or upon expiration of the period of disqualification, such affidavits shall be filed and served as soon as practicable after they are due.

---

**2.** It is noted that not all members of the court are tentatively disposed to adopt the proposal which is set forth herein.

(D) Affidavits filed pursuant to DR 9–102(B) and (C) shall be public except to the extent that a lawyer submitting an affidavit shows that disclosure is inconsistent with Canon 4 or provisions of law.

*DR 9–103* Preserving Identity of Funds and Property of a Client.

[Present DR 9–102, without change other than renumbering.]

*Definitions*

"Law clerk" means a person, typically a recent law school graduate, who acts, typically for a limited period, as confidential assistant to a judge or judges of a court, to an administrative law judge or a similar administrative hearing officer, to the head of a governmental agency or to a member of a governmental commission, either of which has authority to adjudicate or to promulgate rules or regulations of general application.

"Matter" includes any judicial or other proceeding, application, request for a ruling or other determination, contract, claim controversy, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties.

"Participate" includes any action, directly or indirectly, through decision, approval, disapproval, recommendation, the rendering of advice, investigation or otherwise.

The earlier proposal which we today withdraw, and the proposal which we publish herein, have been drawn from a number of sources. Formal consideration of these basic problems was initiated by a petition filed with the court by the Board of Governors of the District of Columbia Bar on February 9, 1979 (based upon a major effort by the Bar's Legal Ethics Committee). We have received the benefit of numerous written comments with respect to that petition. With the exception of the amendments to DR 5–105(D) which we today adopt, and with the exception of the amendments to DR 9–101, DR 9–102, and DR 9–103 (with related definitions) which we today propose, the "Petition of the Board of Governors of the District of Columbia Bar for Amendment of the Provisions of the Code of Professional Responsibility Implementing Canon 9" is denied in all other respects.

As was true with respect to our earlier Notice of Proposed Order, we invite written comments by interested parties concerning the proposals set forth herein.[3] Ten copies of any such comments shall be filed with the Clerk of the Court no later than September 15, 1981.

PER CURIAM.

Copies to: All parties who previously submitted written comments to the court concerning this subject.

*Associate Judges* KERN and NEBEKER, dissenting.*

In our view, the majority considerably disserves the bar by the action which it takes today. We respectfully dissent.

I

It is striking that the majority chooses not to characterize the nature of the responses submitted by the Bar membership to the three proposals which lead to the action taken today. It is an understatement to say it was negative.

The crux of the matter now before us is the adoption of a new DR 9–102.[1] The Ethical Considerations and the Disciplinary Rules which guide the profession of practicing law have been considered carefully and adopted by the American Bar Association as the Code of Professional Responsibility.

---

**3.** Some of the comments which we previously received were directed in whole or in part to the concept of requiring the filing of affidavits. Any party who wishes to call our attention to such comments may do so either by refiling the earlier comments or by making identifying reference to such comments.

\* Associate Judge HARRIS participated in the preparation of this opinion prior to his retirement from the court on February 5, 1982; it reflects his views.

**1.** The present DR 9–102, captioned "Preserving Identity of Funds and Property of a Client," is left intact by the majority and renumbered as DR 9–103.

Rule X of our Rules Governing the Bar states:

> The American Bar Association's Code of Professional Responsibility, as amended by the Court (See Appendix A for amendments to date), shall provide the standards governing the practice of law in the District of Columbia. Amendments thereto adopted by the American Bar Association shall be deemed incorporated therein as of the ABA's effective date unless the Court, sua sponte, defers the effectiveness of any such amendment, or unless the Bar, or any voluntary bar association, within 90 days prior to the ABA's effective date petitions the Court to reject or modify said amendment.

The present DR 9–101 provides:

> Avoiding Even the Appearance of Impropriety
>
> (A) A lawyer shall not accept private employment in a matter upon the merits of which he has acted in a judicial capacity.
>
> (B) A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.
>
> (C) A lawyer shall not state or imply that he is able to influence improperly or upon irrelevant grounds any tribunal, legislative body, or public official.[2] [Footnotes omitted.]

Inquiries as to the applicability of the Code of Professional Responsibility to specific factual situations have produced interpretive opinions by the Committee on Ethics and Professional Responsibility of the American Bar Association (*see* particularly ABA Formal Opinion No. 342, *supra* note 2) and by the Legal Ethics Committee of the District of Columbia Bar.

This proceeding was begun by the submission on February 9, 1979, of a 42-page petition (with two lengthy exhibits thereto) by the Board of Governors of the District of Columbia Bar. That filing reflected a great deal of effort directed to ethical problems which might be presented by a government employee's entering the private practice of law. We do not wish to discuss the Board of Governors' proposals (and its Ethics Committee's alternative proposals) in detail. Suffice it to say, in an obviously oversimplified way, that they would have required affected attorneys to have filed quadruple affidavits attesting that they and their law firms will do and have done no wrong.

The mere pendency of the Bar's petition evoked a torrent of responses which were filed with the court. It would be infeasible to characterize them beyond noting that they were overwhelmingly negative to the Board of Governors' proposals.

Time passed. On April 17, 1980, the court issued a Notice of Proposed Order. We then invited comments upon a proposal—characterized for purposes of simplicity as a waiver proposal—which was quite different from that urged by the Bar's Board of Governors. *See* Appendix A to the order herein.

No dissent was written with respect to that proposal, since it represented nothing more than a proposal. Twenty-four new responses were filed, which were over-

---

**2.** The related DR 5–105, as amended by us on July 28, 1981, provides:

> If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, other than DR 2–110(B)(3) or (B)(4) or DR 6–101(A)(1), or, in appropriate cases, DR 5–101(A), no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment, provided that any imputed disqualification or restrictions that attach because a lawyer was a public employee shall be determined under Canon 9.

Formal Opinion No. 342 of the ABA's Committee on Ethics and Professional Responsibility (Nov. 24, 1975, printed at 62 A.B.A.J. 517), and decisions such as *Armstrong v. McAlprin*, 625 F.2d 433 (2d Cir. 1980) (en banc) (judgment vacated and case remanded with instructions to dismiss appeal, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981)), make it clear that an individual lawyer's disqualification by virtue of prior government service does not extend to the other members of the firm as long as the disqualified lawyer is screened from the case which gives rise to the individual's disqualification.

whelmingly negative.[3] Fortunately, the flood of negative comments disabused the majority of its earlier notion that a cumbersome and illogical waiver procedure would be desirable. Unfortunately, the majority was unwilling simply to deny the Bar's petition, but rather shifted into a slightly less objectionable way of dealing with what it perceives to be—but is unwilling (or unable) to explain why—a problem. Thus, on July 28, 1981, the earlier Notice of Proposed Order was withdrawn. A minor amendment of DR 5–105(D) was adopted, and a dramatically different proposal was announced. *See* Appendix B to the order herein. It is characterized as the "screening and affidavits" approach.

Still further responses were filed to those proposals. Most, as before, were negative. The majority apparently now recognizes the problems inherent in requiring multiple affidavits, and has yielded on that score. It still insists, nonetheless, upon adopting a pointless and cumbersome "screening and notification" procedure.

## II

There are several reasons why we disagree with the majority. The first is quite simple: The American Bar Association is in the process of giving careful study to the entire subject matter. The ABA's Commission on the Evaluation of Professional Standards (often referred to as the Kutak Commission) has labored long and hard on these very issues. One of the great advantages of the Code of Professional Responsibility is that it is national in scope. The questionable notion that this issue is of "greatest importance" to the nation in this jurisdiction is a weak basis on which to justify our haste to hit the rule books first. It could be chaotic for each of the country's jurisdictions to adopt its own rules as to the conduct of former government officials who enter private practice; common sense dictates that we should stay our hand in this area until the ABA makes its decisions—

which, of course, we then would be in a position to evaluate.

Second, there has been absolutely no need demonstrated for the amendments which the court adopts today. The public interest in having talented attorneys transfer freely between private practice and government service is recognized by all but a few. For countless years lawyers have left government service to enter private practice. A general awareness of ethical considerations, has permitted any possible problems readily to be alleviated in all but a tiny percentage of cases. In the rare case in which one party perceives a continuing problem to exist, a motion for disqualification may be filed and the matter may be adjudicated. *See, e.g., Brown v. District of Columbia Bd. of Zoning,* D.C.App., 413 A.2d 1276 (1980); *Armstrong v. McAlprin,* 625 F.2d 433 (2d Cir. 1980) (en banc) (judgment vacated and case remanded with instructions to dismiss appeal, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981)).

Additionally, the amendments adopted today are antithetical to the overall thrust and tone of the Code of Professional Responsibility. It seeks to provide guidelines, rather than functioning like a statute in establishing specific requirements which must be followed. The Code of Professional Responsibility treats lawyers as mature and conscientious professionals; the amendments we adopt today do not. We see no sound basis for requiring the "personally disqualified lawyer" and "at least one affiliated lawyer" to file and serve statements attesting to the fact that they understand that they will not do that which they should not do. Perhaps there still is room in the elementary schoolroom for having a misbehaving pupil write "I will not be bad" on the blackboard, but to require attorneys to undertake a comparable act is not only needlessly time-consuming, but is demeaning to the profession as well. There is no reason to treat a former government official and his law firm as though they are

---

**3.** It would serve no purpose to discuss now the many defects in the waiver concept which had

been proposed.

presumptively guilty of violating the Code of Professional Responsibility unless they exclaim that they are not.

Finally, we note that we find nothing particularly objectionable in the substance of the new DR 9–102(A) and (B). However, we strongly disagree with the content of the new DR 9–102(C)–(E). Beyond that, we remain convinced of the vital importance of a Code of Professional Responsibility which is national in scope and applicability. In light of the ABA's current extensive work on the subject matter, we would make no change in the Disciplinary Rules at this time.